**Steven MARTINEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**NO. 03-96-00732-CR.**

Court of Appeals of Texas,
Austin.

May 7, 1998.

P. David Wahlberg, Bender & Wahlberg, P.C., Austin, for Appellant.

Ronald Earle, District Attorney, Philip A. Nelson, Jr., Assistant District Attorney, Austin, for Appellee.

Before JONES, KIDD and DALLY,* JJ.

KIDD, Justice.

Appellant Steven Martinez was convicted of aggravated robbery and the jury assessed his punishment at ninety-eight years' confinement. Tex. Penal Code Ann. § 29.03(a)(1),(2) (West 1994). He contends that the parole law instruction is misleading and therefore unconstitutional. We will affirm the conviction.

**Background**

Appellant does not claim either legal or factual insufficiency of the evidence, thus no extensive review of the facts of the case is necessary. To put the case in context, and because we will consider the facts of the offense in a harm analysis, we note that the record shows that after appellant and two juveniles entered a pawn shop in Austin, appellant leapt over the counter and began stabbing the clerk. She fell and heard appellant say he was taking the money, and saw him approach the store manager. Appellant stabbed the manager in the chest several times. While another robber broke open the gun case and began taking guns, appellant grabbed the money from the cash drawer. Appellant then told his fellow robbers that they were not going to leave anyone "to remember anything." He stabbed the clerk three or four more times as she lay on the floor, leaving her with a total of ten stab wounds in the chest. He demanded the security videotape from the manager, who pointed him to a fake video which appellant took, then he stabbed the manager about seven more times, leaving him with about eleven wounds. Both the manager and clerk survived.

The real security videotape recorded the event and appellant's acts. Appellant, thirty years old at the time of the offense, was the initiator of the robbery. His accomplices were his sixteen-year-old nephew and the nephew's friend of the same age. He got the juveniles drunk on beer and then proposed that they do a robbery. Appellant gave his nephew a pistol to use, and the other juvenile

* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1988).

and appellant had knives. Appellant drove them to the pawn shop in his car.

### The Controversy

In two points of error, appellant contends that the trial court erred by giving the required instruction on parole and good conduct time in the court's charge on punishment. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 4(a) (West Supp.1998). Appellant contends that giving this instruction violated his right to due course of law. Tex. Const. art. I, §§ 10, 13, 19; Tex.Code Crim. Proc. Ann. arts. 1.04 (West 1977) & 39.19 (West 1981). He argues in his second point of error that giving this instruction also violated his right to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States and his right to a jury trial as guaranteed by the Sixth Amendment. Appellant's objection at trial did not specify these constitutional and statutory provisions as the basis for his objection; he simply objected to portions of the court's charge mentioning good conduct time. His argument was that because of the nature of his offense, he is not eligible for release on mandatory supervision and therefore any mention of good conduct time makes the instruction misleading to the jury by implying that he may be able to earn time off his sentence through good conduct time.[1] We will consider appellant's objection at trial that the charge was "misleading" as a sufficient invocation of a violation of due course of law under the Texas Constitution in his first point, and a complaint of violation of due process under the United States Constitution in his second. We need not consider his Sixth Amendment claim. Appellant did not make a sufficiently specific reference to the Sixth Amendment of the United States Constitution to preserve any issue based on that Amendment. *See* Tex.R.App. P. 33.1(a)(1)(A). In addition, another issue would make the second point multifarious. *See Martinez v. State,* 924 S.W.2d 693, 698 (Tex.Crim.App.1996) (combining due process and ineffective assistance of counsel claims is multifarious); *Rainey v. State,* 949 S.W.2d 537, 542 n. 1 (Tex.App.—Austin 1997, pet. ref'd) (combining state and federal points is multifarious).

Appellant contends that the parole law instruction misstates the law and was misleading to the jury. The instruction given by the trial court in its charge on punishment was as follows:

> *Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.*
>
> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any *good conduct time* he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law and *good conduct time* might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will

1. Mandatory supervision is a statutory program requiring an inmate who has not been paroled to be released under supervision when the calendar time he has served plus his accrued good conduct time equals the full term of his sentence. It is not available to inmates who have committed certain serious offenses or who used or exhibited a deadly weapon. Appellant is not eligible because his conviction was for aggravated robbery and there was also a finding of the use or exhibition of a deadly weapon. *See* Tex. Gov't Code Ann. §§ 508.147, .148, § 508.149(a)(1), (11) (West Supp.1998); Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(1)(F) (aggravated robbery) and § 3g(a)(2) (affirmative finding of use or exhibition of deadly weapon) (West Supp.1998).

> depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the parole law and *good conduct time.* However, you are not to consider the extent to which *good conduct time* may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See* Tex.Code Crim. Proc. Ann. art. 37.07, § 4(a) (West Supp.1998) (emphasis added).

Giving this instruction is mandatory. *Id.; see Cormier v. State,* 955 S.W.2d 161, 164 (Tex.App.—Austin 1997, no pet.). A predecessor of this instruction was held unconstitutional in *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App.1987). The court held that it violated the separation of powers provision in article II, section 1, and the due course of law provisions in article I, sections 13 and 19 of the Texas Constitution. *Rose,* 752 S.W.2d at 552–53 n. 2. In response to this holding, the legislature submitted a constitutional amendment, which was approved by Texas voters on November 7, 1989, to authorize giving jurors this type of information. The constitution now provides:

> The Legislature shall by the law establish a Board of Pardons and Paroles and shall require it to keep records of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws *and laws that require or permit courts to inform juries about the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense.*

Tex. Const. art. IV, § 11(a) (emphasis indicates portion added by constitutional amendment).

The parole instruction was upheld against a due course of law challenge in a case tried after reenactment of the statute pursuant to the constitutional amendment. *Oakley v. State,* 830 S.W.2d 107 (Tex.Crim.App.1992). The court held that the constitutional amendment removed the Texas Constitution due course of law constraints that plagued the former article 37.07, section 4. *Id.* at 111. The court also held that the separation of powers problem was corrected by the amendment. In a companion case, the court held that the parole instruction does not violate federal due process. *Muhammad v. State,* 830 S.W.2d 953, 956 (Tex.Crim.App.1992). The instruction in the instant case is the same as the one upheld in *Oakley* and *Muhammad* except for changes made in 1993 to reflect the increase in the number of years and portion of sentence required to be served before parole eligibility. *See* Act of June 19, 1993, 73d Leg., R.S., ch. 900, § 5.02, 1993 Tex. Gen. Laws 3586, 3743–44.

Appellant argued at trial that the instruction was misleading because the "charge deals with the inmate's release to mandatory supervision...." The instruction does not mention the term mandatory supervision nor does it deal with that program. As the State's brief points out, it is not reasonable to assume a jury will be misled regarding a subject of which it is not aware. Appellant also argued that the instruction is "misleading to the jury in implying that he may be able to earn time off his sentence through the award of good conduct time," whereas he is not eligible for good conduct time to shorten his sentence because of the nature of the offense he committed and because he exhibited and used a deadly weapon while committing it. The instruction only mentions the term "good conduct time" generally and as a possibility, not a certainty. The Court of Criminal Appeals has said: "The inclusion of the parole instruction under Article 37.07, Section 4, simply informs the jury that good conduct time and parole exist, and admonishes the jury that it may not consider the manner in which the parole law may be applied to the defendant." *French v. State,* 830 S.W.2d 607, 608 (Tex.Crim.App. 1992). The State suggests the "basic thought conveyed by this paragraph is to the effect that if you're good, you may get out earlier than if you're bad." The jury was told that the defendant will not become eligible for parole for half the actual time of his sentence or 30 years, whichever is less, "without consideration of any good conduct time he may earn." This is the most specific and pertinent information the jury got about

good conduct time and it is definitely not misleading.

Appellant is mistaken about what the instruction says. He argues that it implies that good time might reduce his "sentence," whereas the instruction, which tracks the statute exactly, actually speaks in terms of earning "time off the period of incarceration." Appellant relies on language in *Rose,* 752 S.W.2d at 534–35 and *Griffin v. State,* 787 S.W.2d 63, 68 (Tex.Crim.App.1990), for his position that the instruction incorrectly states the law. Both cases criticized the original parole instruction for saying that a prisoner might earn time off "the sentence imposed." The court in *Rose* explained that no time was taken off a prisoner's sentence but that mandatory supervision or parole eligibility might be affected by good time. When the legislature reenacted the parole instruction, it amended the instruction to correct the problem pointed out in *Rose* and *Griffin,* and the references to "sentence" were changed to "period of incarceration." Act of May 17, 1989, 71st Leg., R.S., ch. 103, § 1, 1989 Tex. Gen. Laws 442, 442–443. These were the only changes made in the reenactment. A court of appeals recently held that it was error for the trial judge to use the term "sentence imposed" in giving the parole instruction instead of the statutorily mandated phrase "period of incarceration." *Guillory v. State,* 956 S.W.2d 135, 137 (Tex.App.—Beaumont 1997, no pet.). No such change in the language was made in the instant case.

■ A fair analysis of the parole instruction and the claim that it is misleading requires consideration of the entire instruction. The first two paragraphs mention good time and parole in a general way. The third makes it clear that this defendant's eligibility for parole is one-half his sentence, or thirty years, whichever is less, "without consideration of any good conduct time he may earn." The final two paragraphs explain that it cannot be predicted how parole or good time might be applied to this defendant, and that while the jury may consider the existence of parole and good conduct time, the jury is directed not to consider how good conduct time or parole law may be applied to this particular defendant. An appellate court may assume that the jury will follow the instruction as given, and will not reverse in the absence of evidence that the jury was actually confused by the charge. *Williams v. State,* 937 S.W.2d 479, 490 (Tex.Crim.App. 1996) (citing *Rose,* 752 S.W.2d at 554); *See Love v. State,* 909 S.W.2d 930, 935 (Tex. App.—El Paso 1995, pet. ref'd) (referred to as a curative instruction).

Nothing in the record in the instant case suggests that the jury discussed, considered or tried to apply what they were told about good time and parole. There were no notes to the judge indicating confusion. There was no testimony of jurors about any juror misconduct. Two of our sister courts of appeal in similar factual situations have found that the instruction was not misleading. *Garcia v. State,* 911 S.W.2d 866, 869 (Tex.App.—El Paso 1995, no pet.) (aggravated sexual assault of child); *Garrett v. State,* 834 S.W.2d 605, 608 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (aggravated robbery, jury note asking about minimum time that might be served in light of parole laws). We agree that the instruction is not misleading. If the jury follows the directions, there is no confusion or harm. There is no showing that the jury did not follow the instruction in this case. We reject appellant's claim that the instruction is misleading, and overrule points of error one and two.

■ Even if the mention of good conduct time fostered some confusion, there was no harm. The standard for reversible constitutional error in the punishment phase requires reversal of the punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the punishment. Tex.R.App. P. 44.2(a). The rule in effect at the time of appellant's offense and trial, former Rule 81(b)(2), was essentially the same.[2]

2. The matter at issue is charge error, but a harm analysis under *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g), is inappropriate when a statute specifies charge language and the challenge is to the federal or state constitutionality of that statute. By contrast, the *Almanza* standard of review is limited to violations of articles 36.14 through 36.18 which do

Assuming arguendo that giving the parole instruction was error of constitutional dimension, we apply the harmless error standard by considering the factors outlined by the Court of Criminal Appeals in *Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App. 1989). These are: (1) The source of the error, (2) nature of the error, (3) the extent to which the error was emphasized by the State, (4) the probable collateral implications of the error, (5) the weight which a jury is likely to attach to the error, and (6) the extent to which declaring the error harmless will encourage repetition of the error. *Id.* The source and nature of the parole instruction is a legislative enactment giving very general information about the existence of parole and good conduct time. The error claimed here is that it could confuse the jury by making them think that appellant might somehow get credit on his period of incarceration for good conduct. At the same time, the jury is told not to consider the manner in which good conduct time would apply to appellant.

The prosecutors did not refer to the parole instruction in their arguments at the punishment phase. They stressed the brutal and vicious nature of appellant's attacks on the two victims. The only mention of parole was by appellant's lawyer. He told the jury, "I would tell you that the only way that Steve Martinez could ever be released on a penitentiary time sentence is if he serves all of his sentence day for day or if he was released on parole." No one contradicted this explanation. There were no questions from the jury regarding parole.

The only collateral implications that might arise from the instruction is that the jurors might be uncertain and vague about whether or how good time might affect appellant, but since they are instructed not to try to do anything about this, and they do not have enough specific information to try to determine the impact of good time, there is little likelihood that the subject of good time will be given any weight by the jurors. The final factor looks to the extent to which declaring the error harmless will encourage repetition. If trial courts follow the law, the instruction will be repeated. However, the instruction does not encourage or permit the State to discuss parole or good time, so holding the instruction harmless will not encourage improper argument or comment.

We do not believe that the jurors might possibly have been prejudiced in their decision making by the instruction on good time. There is no reason to believe the jury changed its assessment of punishment because of the effect of good time on mandatory release because there is no reason to believe that the jury might have been aware of mandatory release or how it might operate. The jury deliberated for approximately one hour before returning the punishment verdict of ninety-eight years, one year less than the maximum sentence. There was a motion for new trial filed, but it did not contain any allegation that the jury discussed the parole instructions or attempted to apply them to appellant. The heinous nature of the offense, appellant's position as ringleader and his use of juveniles to commit it, putting weapons in their hands for this purpose, and his expressed intention to get rid of the witnesses and his attempt to do that, all militate toward a severe sentence. It would be difficult to imagine what more appellant might have done to make this offense any worse than it was. That his victims survived to testify against him was not to his credit. His intent to kill was unmistakable. These factors weigh so strongly in the balance against the slight and speculative possibility that the jury might have been concerned with the application of good time and disobeyed the court's directions not to consider it, that we determine beyond a reasonable doubt that the alleged error, if any, made no contribution to the punishment, and even if error, was harmless.

## Conclusion

Having overruled appellant's points of error, the judgment of conviction is affirmed.

not implicate state or federal constitutional rights. *Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App.1994); *Rose,* 752 S.W.2d at 553–

54. *See also Belyeu v. State,* 791 S.W.2d 66, 74–75 (Tex.Crim.App.1989).