TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00566-CR







Eliazar Rodriguez Leal, Sr., Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 95-317-K368, HONORABLE BURT CARNES, JUDGE PRESIDING








 Appellant Eliazar Rodriguez Leal was convicted of aggravated sexual assault of a
child, and his punishment was assessed by the jury at confinement for life in the Institutional
Division of the Texas Department of Criminal Justice. See Tex. Penal Code Ann. § 22.021
(a)(1)(A)(ii), (iii), (a)(2)(B) (West Supp. 1998). In three issues, he contends that the trial court
erred: (1) by denying appellant's requested jury instruction concerning conditions of probation
in addition to those specified by statute; (2) by giving the jury the statutorily required instruction
on parole and good time; (3) by admitting hearsay testimony of a police investigator concerning
the victim's statements. We will affirm the conviction.

 We will address appellant's third issue first. Appellant contends that the trial court
erred in admitting testimony of a police investigator about what the victim told her because it was
hearsay and not within any exception provided by the rules of evidence or statute. The State
contends that the evidence was admissible on several different grounds. This issue requires a
development of the facts of the case.


Background

 Appellant abandoned his eight-months pregnant wife and their three handicapped
children to go live with another woman. He left on April 27, 1995, and in parting, told his wife
that if she ever found out what he had done that she would never forgive him. He also said it
would be better for the kids if he left. Shortly after this, on May 3, their oldest child, a four-year-old girl, told her mother that appellant had "hurt me real bad." The mother testified that the child
said "He put his private in my mouth" and "he rubbed his wee-wee on my bootie." (1) The mother
already had an appointment with the child's doctor for the next day. At the doctor's office,
she asked the doctor to examine the child in relation to the claimed sexual assault. The doctor
found no physical evidence of a sexual assault. The doctor reported the possible child abuse
and the child's charges were investigated by the police and Child Protective Service workers
over the next several days. It was established that the offense had been committed sometime
during the month of April 1995 just before appellant left home. The complaining witness's
handicaps included what her mother described as a "severe speech impairment." The mother
testified that at the time of the offense, over a year prior to the trial, she had to translate about 98
percent of the time for her daughter and that this was the situation during the visit with the doctor.
The victim testified at trial and could be understood by those in the courtroom. On cross-examination, the victim was unable to state the names she used for the front part of the male doll
and the front part and back part on the female doll, although she had used the words on direct
testimony.

 During the investigation, appellant responded to a police invitation to come to the
station to discuss the charges, and in that interview he made an oral statement that he had rubbed
his penis on his daughter's vagina, but denied putting it in her mouth. He made a written
statement that "I have admitted to the officer that I did touch my daughter in a sexual manner." 
In the interview, he was told that his daughter had described his ejaculation and was asked how
she could have seen that. He told Officer Dan LeMay that he had not ejaculated on her, but that
after rubbing his penis on his daughter, he had gone into the bathroom and masturbated and that
his daughter may have followed him, and that might have been how she saw his ejaculate. 
Appellant did not testify at the trial, but Officer LeMay testified about the written and oral
admissions he made.

 The child testified that appellant had put his private part in her mouth and in her
"bootie." She demonstrated with anatomically correct dolls what her father had done to her. She
testified that her father had touched her vaginal part with his penis. She said that it hurt and she
had asked him to stop but he would not. She testified that some "juice" came out of his private
part.

 The mother testified as the outcry witness as the first adult to whom the victim
described the offense. See Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 1998). The
record shows that the mother was a hostile, uncooperative, and unpredictable witness. Shortly
before trial she had told the prosecutor that she refused to testify and would not bring the victim
to court or allow her to testify. At trial, she testified that the only reason that she was there was
that she had been subpoenaed and she understood that the judge would throw her in jail if she did
not appear. She testified that she had tried to commit suicide. At the trial, but outside the
presence of the jury, the prosecutor had to keep asking her if she was listening, whether she could
hear him, and urged her to please act like an adult. The trial court advised her to try to pull
herself together and told her that there was no way for her to avoid testifying.

 The mother's testimony varied from vague to overly detailed on irrelevant matters. 
She tended to wander from the questions asked. She was uncertain of the identity of the female
police officer who had interviewed her and her daughter. In trying to fix the date of the offense,
she thought it was after her fourteenth wedding anniversary and before appellant left on April 27,
1995, but was not sure whether her anniversary was on April 6 or 7. She was not aware that
April 15 was a significant date for federal taxes, so she could not remember the events in relation
to that date. She initially said that she did not know anything about the victim alleging that
appellant had rubbed his penis on the victim's "bootie" until the prosecutor told her about that. 
When the prosecutor refreshed her memory with a written statement she had made on May 12,
1995, which included reports of both charges that appellant had put his penis in her daughter's
mouth and on her "bootie," the mother agreed that she had written that in the statement. She
testified that her memory of the time she wrote her statement was "kind of blurry." On cross-examination, the defense attorney asked whether the mother was "on any antidepressants or mood-altering drugs at this time?" She testified that she was on Paxil, Depacon, Drillaco, and Zoloft. 
She also admitted that when she had talked to the defense attorney and investigator only a few days
before trial and they asked her to state the exact words that her daughter had used to describe what
had happened, she had not told them the same thing that she was testifying to in court.

 Appellant called the victim's doctor as the only defense witness. The doctor
testified that the mother had brought the little girl in and that the mother had done all of the
talking. He said that he did not speak directly to the child, but got all of his information from the
mother. He did an examination for any sign of trauma that might be associated with sexual abuse
and found none. He had laboratory tests conducted for sexually transmitted disease and they were
all negative.

 After the doctor testified and the defense rested, the State called Mary Ryle, a
lieutenant in the Criminal Investigations Division of the Round Rock Police Department. She had
interviewed the victim at home on May 11, 1995, a week after the victim's visit to the doctor's
office. When the prosecutor asked Officer Ryle about talking to the victim, appellant objected on
the ground that anything the victim had told her would be hearsay, and that she was not the proper
outcry witness under the statute. See Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 1998). 
The objection was overruled. Shortly thereafter, appellant objected again, the objection was
overruled and the trial court granted appellant's request for a running objection to anything the
witness would relate that the little girl said, and overruled the running objection.

 Officer Ryle testified that she spoke to the victim's mother a little bit, and then
talked with the victim alone in her bedroom. Officer Ryle asked her where the sexual abuse had
happened, and the girl took her into the other bedroom where there was a baby bed and a single
bed and pointed to the single bed. When asked what had happened, the girl said that her daddy
had put his private on her "bootie." She also demonstrated this with the anatomically correct
dolls. When asked if there was anything else, she put her finger in her mouth and then took the
penis of the male doll and pointed to that. When asked, "He put it in your mouth?" she said
"yes." When asked whether anything came out of it, she said "potty." When asked when he put
it in her mouth did something come out, she said, "juice." When asked what color, she said
"yellow." When asked what happened, she said, "Daddy got a washrag and wiped it off." The
victim used the dolls to demonstrate that she was dressed at the time, that her daddy had pulled
her panties down around her ankles, turned her around with her buttocks exposed and laid on top
of her from the back. When looking at the male doll, the little girl looked at the testicles and
volunteered, "These are balls." Then she looked around it and said, "This is hair." When asked
whether she had seen that on anyone before, she said "yeah," and when asked who, she said
"Daddy."

 Officer Ryle was asked whether she had any difficulty understanding the little girl.

The officer said that she was difficult to understand at that time, and that she had to ask her to
repeat answers several times. It took the officer some time before she could figure out what the
girl was saying about where her mother was when the incident happened, but finally understood
that it happened when her mother went to the store to get milk or get a bottle for the baby.

Hearsay

 Appellant contends that Officer Ryle's statement reporting what the child told her
about the offense was hearsay. The record does not reflect the reason for the court's admission
of this evidence. However, it is a well-settled rule that a trial court's decision will be sustained
on any theory of law applicable to the case, especially with regard to the admission of evidence. 
McDuff v. State, 939 S.W.2d 607, 619 (Tex. Crim. App.), cert. denied, 118 S. Ct. 125 (1997)
(citing Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

 The State contends that the evidence was admissible on several different grounds. 
First, the State argues that the officer's testimony was admissible as a prior consistent statement
and was offered to counter appellant's contention that the mother and others fabricated the charge
and coached the child to make the accusation. See Tex. R. Evid. 801(e)(1)(B). This rule provides
that a statement is not hearsay if the declarant testifies and is subject to cross-examination, the
statement is consistent with the testimony, and it is offered to rebut the charge of recent
fabrication, improper influence, or improper motive in testifying. In addition, a statement offered
as a prior consistent statement must have been made before the charged fabrication, improper
influence or motive arose. Haughton v. State, 805 S.W.2d 405, 407-08 (Tex. Crim. App. 1990);
Campbell v. State, 718 S.W.2d 712, 714-17 (Tex. Crim. App. 1986); Fleming v. State, 819
S.W.2d 237, 246-47 (Tex. App.--Austin 1991, pet. ref'd). See Tome v. United States, 513
U.S.___, 115 S. Ct. 696 (1995) (interpreting federal rule as not applicable to statements made
after charged fabrication arose).

 The State argues that the testimony was in rebuttal of appellant's defense which
charged that the complaining witness's testimony had been fabricated by the mother and was the
result of improper influence by the mother, the police, the little girl's therapist, and the
prosecutor. The complaining witness testified at trial and was cross-examined by appellant's
counsel. Appellant did not request that she be recalled after Officer Ryle's rebuttal testimony nor
was there an objection that she was unavailable. The child and her mother were not released as
witnesses after they testified, and both testified at the punishment hearing. We assume the
availability requirement was met. The statement of Officer Ryle was generally consistent with the
child's testimony at trial, and was fully consistent on the material parts. The only inconsistencies
were that the child did not remember telling Officer Ryle that appellant wiped off his ejaculate
with a washrag, and the number of times that the abuse had occurred. At trial, the victim testified
that it happened once, while the officer said the girl told her it happened three times. These 
minor discrepancies do not make the statement as a whole inconsistent for application of this rule. 
The requisites for applying the rule exist, unless the requirement that the statement be made prior
to the time the motive for fabrication arose excludes the statement.

 As a general rule the State is entitled to present on rebuttal any evidence that tends
to refute the defensive theory and evidence introduced to support that theory. Flannery v. State,
676 S.W.2d 369, 370 (Tex. Crim. App. 1984); Laws v. State, 549 S.W.2d 738, 741 (Tex. Crim.
App. 1977). The defensive theory in the instant case was that the charges against appellant were
fabricated by his wife when he left her. In questioning witnesses on cross-examination during the
State's case-in-chief and in appellant's closing statement, the defense was made both expressly and
by clear implication that the child's testimony had been fabricated by the mother. In closing
argument, appellant's counsel imagined the mother reacted to being left for another woman by
saying to herself, "I am going to say that this child was molested." Defense counsel then outlined
all the possible coaching that could have occurred. The only witness called for appellant was the
doctor. The purpose of having him testify was to show that the mother had done all of the talking
when she brought the child in and told the doctor what the child said that her father had done, and
that the child did not speak clearly enough to be understood. This supported appellant's defensive
theory of fabrication. The mother's testimony about having to interpret nearly everything her
daughter said at the time the offense occurred also tended to impeach the child's testimony and to
support appellant's defense.

 Appellant attacked the credibility of the complaining witness by implication with
questions on cross-examination of the child about how often she had talked to the prosecutor and
whether the prosecutor had coached her to testify as she did. At closing argument, that charge was
expressly made. The prosecutor had spoken to the child only once and that was shortly before
trial. Appellant raised the issue of whether the prosecutor had improperly influenced the child in
her testimony when he spoke to her. In addition, appellant raised the same issue as to the child's
therapist. There was little detail about the child's therapy in the record, but there is no indication
that it began before the time Officer Ryle interviewed the child.

 The child's statement to Officer Ryle preceded the time when the prosecutor or the
therapist had the opportunity to coach the child and influence her testimony. In a case where the
defense raised the issue of improper influence by implying that police investigators and the
prosecutor had invented testimony of a witness to obtain a conviction, the State was allowed to
introduce a prior consistent statement of that witness made before meeting with anyone from the
prosecutor's office. In that case, the defense claimed that the witness had been arrested and knew
he was subject to a charge of capital murder and thus had a motive to fabricate his testimony at
that time. The court looked at the time the alleged improper motive of collusion with the
prosecutor arose, and held that even though the prior statement was made after arrest, it was not
error to admit it. See Alvarado v. State, 816 S.W.2d 792 (Tex. App.--Corpus Christi 1991),
modified (on other grounds) and aff'd, 840 S.W.2d 442 (Tex. Crim. App. 1992). It is not
necessary that the prior statement be made before any possible motive to fabricate arose. "[I]n
order to satisfy Rule 801(e)(1)(B) it is not necessary that a prior consistent statement have been
made before all motives to fabricate arose. The rule requires merely that the witness' prior
consistent statement be offered 'to rebut an express or implied charge against him of recent
fabrication or improper influence or motive.'" Dowthitt v. State, 931 S.W.2d 244, 263-64 (Tex.
Crim. App. 1996). The State's rebuttal evidence was Officer Ryle's testimony which showed that
the child's statement shortly after the event was the same as it was at trial, and therefore the
inference could be drawn that the prosecutor and therapist had not improperly influenced her
testimony. The trial court could have determined that this rebuttal evidence was admissible under
Rule 801(e)(1)(B).

Rebuttal Testimony Not Offered for Truth

 The State also contends that the testimony of Officer Ryle was properly admitted
as rebuttal to counter appellant's attack on both the mother and the child. The State contends that
the testimony was properly admitted because it was not hearsay, since it was offered not for the
truth of the matter, but to show that the child could communicate well enough to tell another
person what had happened to her, and that her mother was not the only person who could
understand her about the time of the offense and outcry. The appellant's theory of fabrication has
been set out at length above. A part of appellant's defensive theory presented at trial was that the
complaining witness could not speak clearly because of her speech impediment and that her mother
interpreted for her most of the time. The crucial part of the theory was that in the case of the
report to the doctor, the mother made the whole story up herself and no one could dispute the
charge because no one else could understand the child.

 The doctor's testimony as a defense witness that the mother was the only one who
told him about the charged offense and that he had found no physical evidence of sexual abuse
seriously impeached the testimony of both the mother and the child. The defensive theory, by
necessary implication, included the idea that the child was not a sufficiently competent witness to
accurately observe and relate events at and about the time of the offense. Although the State's
purpose in offering the testimony and the trial court's reasons for admitting it do not appear in the
record, it is a reasonable deduction that the State was desperate to shore up the testimony of the
mother, which had been impeached by the defense, the prosecution and the mother herself. 
Officer Ryle's testimony regarding the statements of the victim were offered at least in part to
show that the child could be understood despite her speech impediment. This was an important
part of the State's case and was an important fact, completely apart from the truth of the child's
statements. Even though Officer Ryle found it somewhat difficult to understand the child, with
some patience on the officer's part, the child was able to communicate through both oral
statements and demonstrations with the anatomically correct dolls. The child spoke to Officer
Ryle outside the mother's presence and this eliminated or reduced the possibility of
misinterpretation or fabrication by the mother. We believe that the trial court could have
reasonably concluded that the testimony was offered not for the truth of the matter but to rebut the
clear implication of the doctor's testimony that it was the mother and not the child who made the
accusation. The testimony did this by showing the child's competence and ability to communicate
for herself around the time the offense occurred. An extrajudicial statement offered for the
purpose of showing what was said rather than for the truth of the matter stated therein does not
constitute hearsay. Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); Cormier v.
State, 955 S.W.2d 161, 162 (Tex. App.--Austin 1997, no pet.).

 There is an analogous case in which an eighty-year-old victim of a robbery at night
was impeached by the defense. The defense showed by cross-examination that he had poor
eyesight, had cataracts, did not have a practice of wearing his prescription glasses, and had poor
night vision. The defense also showed that the witness could not recall how many photo spreads
he had seen or when he had seen them. The State called a police officer in rebuttal. The
policeman testified that he had shown two photo spreads to the victim who, upon seeing the second
one, immediately identified the defendant and exclaimed "that's him, that's him!" The court said
that the officer's testimony was not hearsay because it came within Tex. R. Evid. 801 (e)(1)(C)
(matters of identification) and "properly rehabilitated the complainant's testimony after his powers
of observation were impeached by the defense." Jones v. State, 833 S.W.2d 634, 635 (Tex.
App.--Houston [14th Dist.] 1992, pet. ref'd ). Although the instant case does not come within
the same rule, Officer Ryle's testimony about the complaining witness's statements to her were
similarly rehabilitative as to the witness's ability to observe and communicate.

 In light of the above, we believe the trial court could have properly admitted the
challenged testimony either as a prior consistent statement to rebut the charges of fabrication and
improper coaching by the prosecutor and therapist, or could have determined that the testimony
was most significant as proof of the child's ability to communicate with adults other than her
mother at about the time of the offense, without regard to the truth of the statement. We hold that
the trial court did not abuse its discretion in admitting Officer Mary Ryle's testimony, and overrule
appellant's third point of error.


Refusal to Give Requested Instruction on Punishment

 Appellant's first claimed error is the trial court's refusal to give the jury an
instruction on punishment requested by appellant. At a conference on the instructions, the trial
court gave the attorneys a copy of his proposed charge on punishment and asked for any objections
or requested charges. The portion of the charge at issue gives the following instruction on
community supervision: "The terms and conditions of community supervision may include, but
shall not be limited to, the conditions that the defendant shall: [the charge then lists twenty
statutory conditions] . . . ." Appellant's attorney requested a change and the court responded:


[DEFENSE ATTORNEY]: If we can add the language somewhere in here that the
Court may impose additional conditions of probation if it so chooses so that the
jury would know that the conditions of probation are not simply limited to these
twenty. 


THE COURT: Well, that objection does come up on occasion, and I've thought
about it in the past. I'm worried about trying to make it--add anything to what we
have here. I think that that can certainly be argued from this language. I think it's
there. It's in legalese, but the thought is there and expressed and can be argued to
the jury. So that will be denied.



 During argument, appellant's attorney did argue to the jury that the court could set
other reasonable conditions of probation beyond the statutory conditions the jury had just heard. 
Several possible additional conditions were suggested by appellant's attorney as examples to
illustrate the court's authority to make the conditions fit the offender. There was no objection to
this argument and explanation.

 The charge given by the trial court was a statement of the law in the terms of the
statute. See Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a) (West Supp. 1998). (2) Appellant's
requested charge was simply a rephrasing of the statutory language used by the trial court. When
a refused charge is substantially the same as that given, or is adequately covered by the court's
charge, there is no harm in failing to give the refused charge. Penry v. State, 903 S.W.2d 715,
753 (Tex. Crim. App. 1995); Hawkins v. State, 660 S.W.2d 65, 81-82 (Tex. Crim. App.1983). 
Appellant has not shown that there is any substantial difference between the charge given and the
one requested. The trial court did not err. Appellant's first issue is overruled.


Parole Instruction

 Appellant's second issue is that the trial court gave the jury an instruction on parole
and good time. He contends on appeal that this violated his right to due course of law under
Article I, Section 19 of the Texas Constitution. (3) At trial, appellant's objection was less specific,
and no direct reference was made to either the federal or the Texas constitution. However,
appellant's counsel's objection was based on the unfairness of the instruction and its tendency to
confuse the jury. We will consider this as a sufficient invocation of the Texas constitutional
protection of due course of law. See Martinez v. State, 969 S.W.2d 497, 497 (Tex. App.--Austin
1998, no pet.).

 Appellant argues that the trial court's instruction on parole and good time, which
conform to the requirements of a statute, invites the jury to speculate about the early release of
prisoners and encourages longer sentences than the jury would otherwise assess. Tex. Code Crim.
Proc. Ann. art. 37.07, § 4(a) (West Supp. 1998). The same arguments appellant makes here were
rejected by the court of criminal appeals in Oakley v. State, 830 S.W.2d 107, 110 (Tex. Crim.
App. 1992), and Bruno v. State, 845 S.W.2d 910, 913 (Tex. Crim. App. 1993). See Muhammad
v. State, 830 S.W.2d 953, 954-56 (Tex. Crim. App.1992) (the instruction does not violate federal
due process). The second issue is overruled.

 Having overruled appellant's three points of error, we affirm the judgment of
conviction.



 

 Marilyn Aboussie, Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Affirmed

Filed: October 22, 1998

Do Not Publish

1. The child's mother testified that "bootie" was a word the child used to describe her "butt."
2. Another condition has been added since the trial in this case, but is irrelevant to the appeal.
3. Appellant also invokes the federal constitutional guarantee of due process but cites no
authority nor makes any argument under those provisions that would distinguish the federal and
Texas protections of this nature. See U.S. Const. Amends. V, XIV. We decline to consider the
reference to the federal constitution, both for the lack of briefing and because it would render the
issue multifarious. Tex. R. App. P. 38.1; see Dunn v. State, 951 S.W.2d 478, 480 (Tex. Crim.
App. 1997).


hink that that can certainly be argued from this language. I think it's
there. It's in legalese, but the thought is there and expressed and can be argued to
the jury. So that will be denied.



 During argument, appellant's attorney did argue to the jury that the court could set
other reasonable conditions of probation beyond the statutory conditions the jury had just heard. 
Several possible additional conditions were suggested by appellant's attorney as examples to
illustrate the court's authority to make the conditions fit the offender. There was no objection to
this argument and explanation.

 The charge given by the trial court was a statement of the law in the terms of the
statute. See Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a) (West Supp. 1998). (2) Appellant's
requested charge was simply a rephrasing of the statutory language used by the trial court. When
a refused charge is substantially the same as that given, or is adequately covered by the court's
charge, there is no harm in failing to give the refused charge. Penry v. State, 903 S.W.2d 715,
753 (Tex. Crim. App. 1995); Hawkins v. State, 660 S.W.2d 65, 81-82 (Tex. Crim. App.1983). 
Appellant has not shown that there is any substantial difference between the charge given and the
one requested. The trial court did not err. Appellant's first issue is overruled.


Parole Instruction

 Appellant's second issue is that the trial court gave the jury an instruction on parole
and good time. He contends on appeal that this violated his right to due course of law under
Article I, Section 19 of the Texas Constitution. (3) At trial, appellant's objection was less specific,
and no direct reference was made to either the fed