**Gary Deon BRADLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–99–00837–CR, 01–99–00840–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 2, 2001.

Joseph Salhab, Houston, for appellant.

Carol M. Cameron, John B. Holmes, Houston, for State.

Panel consists of Justices COHEN, JENNINGS, and DUGGAN.*

## OPINION

COHEN, Justice.

Appellant was charged in two indictments with aggravated assault of two public servants. After a single trial, a jury convicted appellant of both offenses and, after appellant pled true to two felony enhancement paragraphs, assessed punishment at 38 years in prison. We affirm the judgments.

### Background

On July 18, 1998, Houston Police Officer Kamyk was in uniform investigating an unrelated crime and approached appellant's parked car. When he approached to question the occupants, appellant sped away, running a stop sign and fleeing through a residential area at speeds up to 70 miles per hour. Officer Kamyk chased the car until it crashed into a wall. Two passengers then fled. The officer, with his weapon drawn, grabbed appellant through the front passenger-side door and ordered appellant out. Appellant cursed the officer, put the car "calmly" into reverse as if in a "planned and meditated" way, and drove backward rapidly. The officer managed to break free from the moving car's door, but appellant then u-turned, sped back, and hit the officer with his front fender, throwing the officer over the car's hood. As Officer Kamyk tried to get up, appellant came back, trying to run him over, even though the officer testified appellant could have avoided him. Officer Kamyk had to dive out of the car's way. He got to his car and chased appellant.

More officers, including Officer Munoz, arrived and chased appellant, who was speeding recklessly. Officer Munoz was also in uniform. Appellant's car went into a spin until it hit a bridge abutment. Appellant stopped for a second, then started up and rammed head on into Office Munoz's car at a high speed. Officer Munoz testified appellant could have avoided hitting him, and both officers thought appellant rammed Officer Munoz intentionally. The first impact caused massive damage to the front of appellant's car. Appellant then fled on foot, throwing Officer Kamyk out of his way. Officer Munoz caught up to appellant, who then punched Officer Munoz's head several times. Officer Kamyk then arrived, and appellant struggled violently with both officers, trying to wrest

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Officer Kamyk's gun from the holster. Officer Kamyk sprayed appellant with pepper spray, but to no effect. Appellant, still fighting and struggling, was finally subdued by four or five officers. The officers testified appellant never screamed in pain, and one said appellant admitted he ran because he did not want to go to jail. Officers Munoz and Kamyk testified they were terrified, felt panicked, or feared for their lives. Officer Munoz suffered a painful shoulder injury and missed work because of it.

Appellant denied that he had any passengers, was in the mall parking lot, sped away from Officer Kamyk, crashed into a wall, threw Officer Kamyk out of the way, attacked any officer with a car, or admitted he ran to avoid jail. He testified instead that he did nothing wrong, Officer Kamyk began following his car nonetheless, appellant pulled over when the officer put on his siren, another police car arrived and collided with appellant's car, Officer Kamyk beat appellant with a baton, both officers (later joined by three others) began beating him, the pepper spray blinded him, he was screaming for help, and the officers tried unsuccessfully to throw him in the bayou. Appellant and his common-law wife also testified that the car appellant drove could not drive as fast as the officers had claimed.

During the guilt-innocence stage of trial, the jury learned appellant had been convicted three times of theft (two misdemeanors and a felony) and once each for the felonies of burglary and cocaine possession. During the punishment stage of trial, the jury learned appellant had been convicted in addition of cocaine possession, for which he had received probation, misdemeanor marihuana possession, and misdemeanor carrying a weapon. His four misdemeanor sentences ranged from 15 to 90 days, and his four felony sentences

ranged from probation (three times with two revocations) to 10 years. The total time assessed in jail and prison on these crimes exceeded 16 years. The jury also learned appellant had a history of disciplinary problems in prison, including guilty findings or pending charges on assaults of other inmates (more than one incident), trafficking prescription medication, destroying county property, using abusive language, exhibiting disruptive conduct (more than one incident), refusing to obey orders (more than one incident), being in an unauthorized location, and fighting. A sheriff's sergeant in the inmate disciplinary division testified that less than two percent of inmates have disciplinary action taken against them.

### Constitutionality of Code of Criminal Procedure Article 37.07, Section 4(a)

In his sole issue, appellant claims the jury instruction that his sentence might be reduced through award of good-conduct time was unconstitutional as applied to him because he was not eligible for such a reduction. *See* TEX. GOV'T CODE ANN. 508.149(a)(7) (Vernon Supp.2001); TEX. PENAL CODE ANN. § 22.02(b)(1) (Vernon 1994). We agree.

The trial judge charged the jury in accordance with mandatory Code of Criminal Procedure article 37.07, section 4(a):

*Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also*

*take away all or part of any good conduct time earned by the prisoner.*

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, *without consideration of any good conduct time he may earn.* If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law *and good conduct time* might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law *and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.* You are not to consider the manner in which the parole law may be applied to this particular defendant.

(Emphasis added.) Appellant did not object to this instruction.

■ This Court has previously held that article 37.07, section 4(a)'s reference to good-conduct time violates state due course of law and federal due process when applied to defendants, like appellant, who are not eligible for it. *See Jimenez v. State,* 992 S.W.2d 633, 637–38 (Tex.App.—Houston [1st Dist.] 1999) (*"Jimenez I"*), *aff'd on other grounds,* 32 S.W.3d 233 (Tex.Crim.App.2000) (*"Jimenez II"*) (designated for publication) (affirming harmless-error analysis, without deciding whether statute was unconstitutional as applied); *see also* Tex. Gov't Code Ann. 508.149(a)(7) (appellant's offense disqualifies him from mandatory supervision). Other courts of appeals have disagreed.[1] The State asks us to overrule *Jimenez I.* We decline. Based on *Jimenez I,* we hold the charge was unconstitutional as applied to appellant.

■ We follow *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984), and review the whole record for egregious harm.[2] *Jimenez II,* 32 S.W.3d at 237–38. The jury was instructed not to consider how good-conduct time might affect appellant. We presume it followed this instruction. *See Williams v. State,* 937 S.W.2d 479, 490 (Tex.Crim.App.1996). Appellant points to no evidence, such as jury notes or testimony, that would contradict this presumption. *See id.; Jimenez I,* 992 S.W.2d

---

1. *See Cagle v. State,* 23 S.W.3d 590, 593–94 (Tex.App.—Fort Worth 2000, pet. filed); *Edwards v. State,* 10 S.W.3d 699, 705 (Tex.App.—Houston [14th Dist.] 1999, pet. granted); *Luquis v. State,* 997 S.W.2d 442, 443–44 (Tex.App.—Beaumont 1999, pet. granted); *Hyde v. State,* 970 S.W.2d 81, 89–90 (Tex.App.—Austin 1998, pet. ref'd); *Martinez v. State,* 969 S.W.2d 497, 500–01 (Tex.App.—Austin 1998, no pet.); *see also Boston v. State,* 965 S.W.2d 546, 549–50 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd); *Garcia v. State,*

911 S.W.2d 866, 868–69 (Tex.App.—El Paso 1995, no pet.).

2. Appellant's brief asks us to apply the harmless-error rule for constitutional error, but the Court of Criminal Appeals has since held we must apply the *Almanza* standard when this error is unobjected to. *Jimenez II,* 32 S.W.3d at 237–38. On the other hand, *Jimenez II* also forecloses the State's argument that *Almanza* does not apply and that appellant's constitutional challenge is thereby waived for lack of objection. *See id.*

at 638. While the jury assessed 38 years in prison, the punishment range was 25 to 99 years or life because of appellant's two prior felony convictions. *See* TEX. PENAL CODE ANN. § 12.41(d) (Vernon Supp.2001). The State once mentioned good-time conduct in closing, after noting appellant's lengthy criminal history and disciplinary offenses and crimes in prison:

> You have somebody who has a criminal history from 1987 to 1995, as far as convictions, and then, in '98, assaults two police officers. And then we put him in jail; and while he's in jail, he commits all these other violations. You know, he doesn't care unless he's sitting here in front of a jury deciding his fate; and that's the truth. He does not care. I want you to go back there, and I want you to decide what you think is right. *And just remember, ladies and gentlemen, that in here they talk about—they talk about good time credit.* And I think you can agree people can be rehabilitated in prison; so consider that. How much time does he need to be rehabilitated? How much time do we want to pass before Mr. Bradley's back on the street, doing whatever he wants to do? That's what you need to decide.

(Emphasis added.) While this reference weighs in favor of finding harm, nothing shows the statement confused the jury or that the jury disobeyed the judge's instructions not to consider good-conduct time. *See Jimenez I,* 992 S.W.2d at 638. Moreover, the jury gave appellant a punishment only 13 years above the minimum—despite the serious, prolonged, and repeated violence of his attack on several officers; his long criminal history of four felonies and four misdemeanors; his continued crimes in prison; and the jury's implicit conclusion that he perjured himself at trial—when it could have assessed up to life imprisonment.

Accordingly, we hold appellant did not show egregious harm. *See Martinez v. State,* 969 S.W.2d 497, 501–02 (Tex.App.— Austin 1998, no pet.) (after holding the good-conduct-time instruction was not unconstitutional, concluding it would not have been harmful under 44.2(a) even if it were unconstitutional, although the State mentioned parole once in closing, when the jury was instructed not to consider parole or good-conduct time, nothing showed the instruction confused the jury, and the crime was heinous); *Jimenez I,* 992 S.W.2d at 638–39 (considering similar factors in concluding error was harmless, although the instruction was not mentioned in closing arguments); *see also Green v. State,* 839 S.W.2d 935, 946 (Tex.App.— Waco 1992, pet. ref'd).

We overrule appellant's sole issue.

We affirm the judgments.

**JENNINGS, J., concurring.**

JENNINGS, Justice, concurring.

I concur with the result affirming the judgments; however, this Court should overrule *Jimenez v. State,* 992 S.W.2d 633 (Tex.App.—Houston [1st Dist.] 1999) (*"Jimenez I"*), aff'd. on other grounds, 32 S.W.3d 233 (Tex.Crim.App.2000)(*"Jimenez II"*) and hold article 37.07, section 4(a) of the Code of Criminal Procedure is constitutional.

A review of the pertinent statutes is necessary to understand whether the charge in question is erroneous to the point of constituting a denial of due process. Both parole and mandatory supervision are governed by Subchapter E of the Texas Government Code. TEX. GOV'T CODE ANN. §§ 508.141–.156 (Vernon 1998 & Supp.2001).

*Parole*

Parole means "the *discretionary* and conditional release of an *eligible* inmate

sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division." TEX. GOV'T CODE ANN. § 508.001(6) (Vernon Supp.2001) (emphasis added). A parole panel *"may consider* for release and release on parole an inmate who: (1) has been sentenced to a term of imprisonment in the institutional division; (2) is confined . . .; and (3) is *eligible* for release on parole." TEX. GOV'T CODE ANN. § 508.141 (Vernon 1998) (emphasis added).

An inmate serving a sentence for an offense described by Code of Criminal Procedure article 42.12, sections 3g(a)(1)(A), (C), (D), (E), (F), (G), or (H) or an offense with an affirmative finding of a deadly weapon under section 3g(a)(2) "is *not eligible* for release on parole *until* the inmate's actual calender time served, *without consideration of good conduct time,* equals one-half of the sentence or 30 calendar years, whichever is less. . . ." TEX. GOV'T CODE ANN. § 508.145(d) (Vernon Supp.2001) (emphasis added). Under section 508.145(f), except for certain aggravated offenses, "any other inmate is *eligible* for release on parole when the inmate's actual calendar time served plus good conduct time equals one-fourth of the sentence imposed or 15 years, whichever is less." TEX.GOV'T CODE ANN. § 508.145(f) (Vernon Supp.2001) (emphasis added).

### Mandatory Supervision

Mandatory supervision means "the release of an *eligible* inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence *not on parole* but under the supervision of the pardons and paroles division." TEX. GOV'T CODE ANN. § 508.001(5) (Vernon Supp.2001) (emphasis added). Section 508.147(a) provides as follows:

*Except as provided by Section 508.149, a* parole panel *shall order* the release of

an inmate who is not on parole to *mandatory supervision* when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced.

TEX. GOV'T CODE ANN. § 508.147(a) (Vernon 1998) (emphasis added). Under section 508.149(a),

an inmate *may not be released to mandatory supervision* if the inmate is serving a sentence for or has been previously convicted of: (1) an offense for which the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, Code of Criminal Procedure; . . . [or] (7) a first degree or a second degree felony under Section 22.02, Penal Code.

TEX. GOV'T CODE ANN. § 508.149(a) (Vernon Supp.2001) (emphasis added).

Appellant and similarly situated defendants are not eligible for mandatory supervision, but may become eligible for parole, after serving half their actual time in prison. After considering the statutes governing both parole and mandatory supervision, the first paragraph of the charge in question, when read in context with the third paragraph, is not erroneous to the point of amounting to a denial of due process. The third paragraph clearly states appellant will not be eligible for parole until he serves half his time in prison, and it actually tracks the language of section 508.145(d). *See* TEX.GOV'T CODE ANN. § 508.145(d) (the statute provides, "without consideration of good conduct time"; the charge provides, "without consideration of any good conduct time he may earn").

The simple math is clear: half of 38 is 19. The jury knew appellant would serve 19 years in prison before becoming eligible for parole. Even though appellant will not be eligible for mandatory supervision, he

will be eligible for parole after 19 years. Also, while appellant is in prison, he may accumulate good conduct time. Good conduct time will not make him eligible for parole before the expiration of 19 years; however, a parole panel, or a member thereof, may look at appellant's good conduct time and *consider* it in its or his *discretion* when deciding whether to award parole when appellant becomes eligible in 19 years.

Because a parole board member may consider good conduct time in awarding parole, the first paragraph of the charge in question is not erroneous to the point of amounting to a denial of due process. The first sentence of the first paragraph of the charge is erroneous if read to mean *time off* the period of incarceration will be "imposed" through the award of good conduct time because appellant is not eligible for mandatory supervision.[1] However, it is quite clear from the preceding phrase and the very next sentence that this "may" be the case, not "will" be the case; prison authorities have discretion in awarding good conduct time, which affects the award of parole.

More importantly, the final paragraph of the charge instructs the jury not to consider the extent to which good conduct time may be awarded. Also, the charge does not mention mandatory supervision, for which appellant is clearly not eligible.

Although the one-charge-fits-all approach is not artfully applied to appellant or similarly situated defendants, the Legislature did make an effort to create a charge with different portions outlining eligibility for different offenses. The result is not only that appellant and similarly situated defendants are not egregiously harmed; they do not suffer a denial of due process.

Before and after our holding in *Jimenez I*, a number of cases have been decided by other Texas appellate courts, including the Fourteenth Court of Appeals, reaching the opposite conclusion and further clarifying the issue. *Donoho v. State,* 39 S.W.3d 324 at 331–32 (Tex.App.—Fort Worth, no pet. h.); *Espinosa v. State,* 29 S.W.3d 257, 261–62 (Tex.App.—Houston [14th Dist.] 2000, pet. filed); *Cagle v. State,* 23 S.W.3d 590, 594 (Tex.App.—Fort Worth 2000, pet. filed); *Edwards v. State,* 10 S.W.3d 699, 705 (Tex.App.—Houston [14th Dist.] 1999, pet. granted); *Luquis v. State,* 997 S.W.2d 442, 443–44 (Tex.App.—Beaumont 1999, pet. granted); *Hyde v. State,* 970 S.W.2d 81, 89–90 (Tex.App.—Austin 1998, pet. ref'd); *Martinez v. State,* 969 S.W.2d 497, 501–02 (Tex.App.—Austin 1998, no pet.); *Garcia v. State,* 911 S.W.2d 866, 868–69 (Tex.App.—El Paso 1995, no pet.).

Although the Court of Criminal Appeals declined to address the constitutionality issue in *Jimenez II,* Presiding Judge McCormick's concurring opinion illuminated the issue by addressing the due process and due course of law provisions of the United States and Texas Constitutions. *Jimenez II,* 32 S.W.3d at 241–45. He concluded the portion of the statutory charge in question did not deprive Mr. Jimenez of his liberty without due process of law:

> The Legislature had the power to enact the statute. The statute does not violate any explicit provision of either the state or federal constitutions. Appellant received that process which was due him according to the statute; that is, appellant received what state law gave him a right to expect. The statute applies to all other defendants similarly situated to appellant, and there is no evidence of

---

1. This sentence is not erroneous at all if read to mean the period of incarceration "imposed" *by the jury* may be diminished by the award of good conduct time.

legislative vindictiveness with respect to these defendants.

*Jimenez II*, 32 S.W.3d at 245 (McCormick, J., concurring) (footnotes omitted). I agree with Judge McCormick's analysis.

I further agree with Judge McCormick that we applied the wrong standard of harm in *Jimenez I* and, consequently, here. Appellant does not attack the jury charge, but the constitutionality of article 37.07, section 4(a). Thus, I agree with Judge McCormick that the *Almanza* standard should not apply and appellant's claim should be considered procedurally defaulted because he did not raise it at trial. *Jimenez II*, 32 S.W.3d at 247 (McCormick, J., concurring). We are the only appellate court to hold article 37.07, section 4(a) unconstitutional, and I believe we should revisit *Jimenez I*.[2]

Trial courts in the First and Fourteenth Courts' districts, because of the conflicting rulings on this issue, have no authoritative guidance as to whether article 37.07, section 4(a) is constitutional, and the Court of Criminal Appeals has not offered any alternative jury charge to what is statutorily required by article 37.07, section 4(a). Therefore, we should consider the reasoning and clarification of the above-cited cases and Judge McCormick's *Jimenez II* concurrence. Moreover, we should overrule *Jimenez I* and hold article 37.07, section 4(a) is constitutional as applied to appellant and other similarly situated defendants.

I respectfully concur in the result only.

---

**2.** The Fourteenth Court of Appeals has held article 37.07, section 4(a) constitutional, and the Court of Criminal Appeals has not ruled on the issue.