**PHAT VAN BUI, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–00–00507–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 24, 2002.

Jerry Guerinot, Houston, for Appellant.

Carol M. Cameron, Assistant District Attorney, Houston, for the State.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and JENNINGS.

## EN BANC OPINION

JENNINGS, Justice.

A jury found appellant, Phat Van Bui, guilty of aggravated robbery and assessed

punishment at 15 years in prison with a $10,000 fine. Appellant brings five points of error and challenges the effectiveness of his trial counsel, the factual sufficiency of the evidence to support the jury's verdict, and the admission of an extraneous offense over his objection. He further challenges the constitutionality of the parole charge to the jury, required by article 37.07 section 4(a) of the Texas Code of Criminal Procedure, as applied to criminal defendants whose actual time in prison is affected by section 508.149(a) of the Texas Government Code.

This Court has previously held that the article 37.07 section 4(a) reference to good conduct time violates state due course of law and federal due process protections when applied to defendants, like appellant, "who are not eligible for it." *Bradley v. State*, 45 S.W.3d 221 (Tex.App.—Houston [1st Dist.] 2001, pet. filed); *Jimenez v. State*, 992 S.W.2d 633 (Tex.App.—Houston [1st Dist.] 1999) ("*Jimenez I* "), *aff'd on other grounds*, 32 S.W.3d 233 (Tex.Crim. App.2000) ("*Jimenez II* ") (affirming harmless error analysis, without deciding whether statute was unconstitutional as applied).

En banc consideration was requested and granted to address the above holding in *Bradley* and *Jimenez I*. Today, for the reasons discussed below, the En Banc Court, after careful and deliberate consideration, overrules that holding. We hold that the article 37.07 section 4(a) reference to good conduct time does not violate state due course of law and federal due process protections when applied to defendants, like appellant, whose actual time in prison is affected by section 508.149(a) of the Texas Government Code. We affirm.

## Background

Su Ngo testified that he owned the Thien Thanh Vietnamese restaurant at the 11,200 block of Bellaire in Houston. On August 12, 1999, an unidentified Asian male, small in stature and between 16 and 19 years of age, entered the restaurant. The young man asked Ngo for a menu and a soybean order to go. Ngo told him he did not provide menus or orders to go, and the young man left.

The young man, accompanied by appellant, returned quickly. Both armed, they entered the restaurant and "racked" their guns. Ngo described appellant to police as having crew-cut style black hair with red dye on top and appearing older and taller than the other gunman. Appellant, shaking and staying near the door, pointed his gun at Ngo, who told appellant to put the gun away and take whatever he wanted. Appellant's accomplice approached Ngo and told him to open the register. Ngo complied, and the accomplice took between $200 and $300. The accomplice demanded Ngo's wallet, which Ngo gave him. During this time, appellant continued to point his gun at Ngo. Appellant and his accomplice then left the restaurant and drove away. Ngo followed them to the parking lot, trying to get their license plate number.

Officer James Begeal, of the Houston Police Department's Westside Division Gang Unit/Asian squad, testified he was assigned to the investigation of the robbery. After appellant became a suspect, Officer Begeal created a photo-spread containing a photograph of appellant and five other Asian males with similar physical features. Officer Begeal showed the photo-spread to Ngo, who immediately identified appellant as one of the gunmen. After obtaining an arrest warrant, Officer Begeal arrested appellant and seized a semi-automatic nine millimeter Beretta handgun in appellant's possession. The Berretta was similar to the weapon, as

described by Ngo, used by appellant in the robbery.

At trial, Ngo made an in-court identification of appellant as one of the gunmen in the robbery. Ngo noted that appellant's appearance in court differed from his appearance on the day of the robbery. In court, appellant was wearing glasses and a suit jacket, and had his hair combed back without any red dye in it.

### Ineffective Assistance of Counsel

■ In his first point of error, appellant claims he received ineffective assistance of counsel because his attorney failed to object to Ngo's in-court identification of appellant. During his testimony on direct examination, Ngo identified appellant without objection. During cross-examination, Ngo admitted that, prior to trial, he sat next to appellant in the courtroom for about twenty minutes without recognizing him. Ngo also admitted that, prior to his testimony, the prosecutor showed him appellant's driver's license photograph.

■ A claim of ineffective assistance of counsel is reviewed under the two-pronged standard set out in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Appellant must first show that his lawyer's conduct was deficient, i.e., that his assistance fell below an objective standard of reasonableness. *Id.* Second, assuming he has demonstrated such deficient assistance, it is necessary to affirmatively prove prejudice. *Id.* In other words, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Whether this standard has been met is judged by the totality of the representa-

tion rather than by isolated acts or omissions by trial counsel. *Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986); *Brown v. State,* 866 S.W.2d 675, 677 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

■ Any allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson,* 9 S.W.3d at 813. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* Absent both showings, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*

Here, appellant filed a motion for new trial, but no hearing was held. The motion for new trial was overruled by operation of law. Thus, the record is silent as to why appellant's trial counsel did not object to Ngo's in-court identification. The record does reveal Ngo admitted on cross-examination that he did not recognize appellant on the day of the trial before being shown appellant's driver's license photograph. However, the record also demonstrates Ngo positively identified appellant prior to trial in a photo-spread. It further reflects that appellant's appearance in court differed from the day of the robbery, in that appellant was wearing a suit and glasses in court and did not have part of his hair dyed red. In addition, as discussed below, the State presented evidence of appellant's involvement in a similar extraneous aggravated robbery as further proof of appellant's identity in the instant case.

Based on the record presented, we simply cannot say appellant's trial counsel's performance was deficient. Appellant has not overcome the presumption that not objecting to the in-court identification under these circumstances might be considered sound trial strategy. *Gamble v. State,* 916 S.W.2d 92, 93; *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2064. Given Ngo's pretrial identification of appellant in the photo-spread, the change in appellant's appearance since the date of the robbery, and the admission of the extraneous offense, showing that the result of the proceeding would have been different would be virtually impossible. An objection to Ngo's in-court identification of appellant would arguably have been futile.

To find trial counsel ineffective based on the asserted ground would call for speculation in which we will not engage. *See Gamble v. State,* 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Appellant has not rebutted the presumption that trial counsel made all significant decisions in the exercise of reasonable professional judgment, and appellant has not demonstrated in the record that counsel rendered ineffective assistance. *See Thompson,* 9 S.W.3d at 814.

We overrule appellant's first point of error.

### Factual Sufficiency

■ In his second point of error, appellant argues the evidence is factually insufficient to support the jury's finding that he committed aggravated robbery. Specifically, appellant claims that evidence of Ngo's misidentification of him was established by the defense witness, Anna Luu.

■ Under the factual sufficiency standard, we ask, "whether a neutral review of all of the evidence both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *King v. State,* 29 S.W.3d 556, 563 (Tex.Crim.App. 2000). We will reverse the fact finder's determination only if a manifest injustice has occurred. *Id.* In conducting this analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but must also avoid substituting our judgment for that of the fact finder. *Id.*

■ We note that, as the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony, the jury may believe or disbelieve all or any part of a witness's testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981) ("A jury is entitled to accept one version of the facts and reject another or reject any of a witness's testimony.").

In support of his factual sufficiency argument, appellant contends Ngo misidentified him. He claims there are a number of inconsistencies in Ngo's testimony regarding the age and height of the gunmen and the weapons used. He relies on the testimony of Anna Luu. She stated she was at the restaurant at the time of the robbery, and she saw a "tall" Asian male, with short black hair with red in it, approach Ngo at the cash register. He was in the restaurant for only one or two minutes and left the parking lot in a gold Mercedes. Only when Ngo told her, moments later, did she realize he had been robbed. She saw only one man and did not see any weapons. Luu testified appellant was not the same man she saw approach Ngo. Appellant claims that because Luu testified the "tall" Asian male, with short black hair with red in it, was the one who approached Ngo at

the register, "the evidence to prove Appellant *was the taller gunman* is so contrary to the overwhelming weight of the evidence as to be *clearly wrong* and *manifestly unjust.*"

However, Ngo, eleven days after the robbery, identified appellant's photograph in a photo-spread as one of the men who robbed him. Although appellant's appearance had changed from the date of the robbery to the date of trial, Ngo also identified appellant at trial as one of the men who robbed him. Ngo testified he was certain appellant was the person who robbed him. Also, the Berretta handgun seized from appellant at the time of his arrest was similar to the semi-automatic weapon, as described by Ngo, used by appellant in the robbery. Moreover, as discussed below, the State presented evidence of appellant's involvement in an extraneous aggravated robbery as further proof of his identity in the instant case.

Luu's testimony was not necessarily contradictory and certainly not dispositive. She never saw the gunman who, as described by Ngo, stood close to the door. Further, on cross-examination by the State, Luu admitted that she had known appellant's family for over 10 years and, prior to trial, she did not tell the police, the district attorney or the appellant's family what she saw.

■ A jury decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State. *Cain v. State,* 958 S.W.2d 404, 410 (Tex.Crim.App.1997). After reviewing all of the evidence without the prism of light most favorable to the verdict, we cannot say the verdict is clearly wrong and unjust. *See Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). Therefore, we find the evidence factually sufficient to support appellant's conviction.

We overrule appellant's second point of error.

**Admission of Extraneous Offense**

■ Appellant contends, in his third point of error, the trial court erred in admitting an extraneous aggravated robbery offense at the guilt-innocence phase of the trial. The State offered the extraneous offense evidence after appellant raised the issue of identity through the testimony of Anna Luu. The evidence presented by the State included testimony by Eric Nguyen, who identified appellant and an accomplice as the men who robbed his restaurant, Saigon Kitchen, minutes before the offense for which appellant was on trial.

■ Evidence of other crimes may be admissible for such purposes as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* TEX.R. EVID. ANN. 404(b) (Vernon Pamph.2000). Proof of identity and rebuttal of defenses are both valid purposes for admitting such evidence under Rule 404(b). *Lane v. State,* 933 S.W.2d 504, 519 (Tex.Crim.App.1996). We review the trial court's determination of admissibility under an abuse of discretion standard. *Id.*

■ Raising the issue of identity does not automatically render evidence of an extraneous offense admissible. *Lane,* 933 S.W.2d at 519. For such evidence to be admissible, the extraneous offense must be so similar to the offense charged that both offenses are marked as the accused's handiwork. *Id.* Sufficient similarity may be shown by proximity in time and place or by a common mode of committing the offenses. *Harvey v. State,* 3 S.W.3d 170 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Ransom v. State,* 503 S.W.2d 810, 813 (Tex.Crim.App.1974)) (holding extraneous offense admissible when similar

offenses committed 20 minutes apart in same neighborhood using same method of operation).

Nguyen testified that he owns the Saigon Kitchen Vietnamese restaurant at the 12,300 block of Bellaire in Houston. On August 12, 1999, two Asian males entered the restaurant, and one asked Nguyen for a menu to go. Nguyen gave him a menu and the two men left. Within one minute, one of the men returned, accompanied by appellant. While his accomplice was feigning to buy a soybean drink, appellant "racked" his gun and, while shaking, pointed it at Nguyen. They demanded that Nguyen open the register, and appellant's accomplice took money from it and from Nguyen's person. The gunmen then left, and Nguyen went looking for them. Within minutes, Nguyen encountered Ngo in a parking lot, also looking for appellant and his accomplice.

Here, both the primary and the extraneous offense were committed within minutes of each other by two individuals at Vietnamese restaurants within blocks of each other. A menu to go was requested in both robberies. The testimony indicated that appellant played the same role in both robberies.

We hold the proximity in time and place of each offense, the common mode in which they were committed, and the similar circumstances surrounding the offenses were sufficiently similar to justify admission of the extraneous offense evidence. *Lane,* 933 S.W.2d at 519; *Ransom,* 503 S.W.2d at 813.

We overrule appellant's third point of error.

### The Parole Charge

In his fourth and fifth points of error, appellant challenges the constitutionality of the parole charge to the jury required by article 37.07 section 4(a) of the Texas Code of Criminal Procedure, as applied to criminal defendants whose actual time in prison is affected by section 508.149(a) of the Texas Government Code.

Article 37.07 section 4(a) provides a mandatory jury charge in the penalty phase of a trial where a defendant is found guilty of an offense listed in article 42.12 section 3g(a)(1) of the Code, or if the judgment contains an affirmative finding under section 3g(a)(2) of that article. TEX.CODE CRIM. PROC. art. 37.07, § 4(a) (Vernon Supp.2001). Article 37.07 states, "the court *shall* charge the jury" as follows:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, *may earn time off the period of incarceration imposed through the award of good conduct time.* Prison authorities *may award good conduct time* to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities *may also take away all or part of any good conduct time* earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned *might be* reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, *he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn.* If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. *Eligibility for parole does not guarantee that parole will be granted.*

*It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment,* because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. *However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.* You are *not to consider* the manner in which the parole law may be applied to this particular defendant.

TEX.CODE CRIM. PROC. art. 37.07, § 4(a) (emphasis added).

The trial judge charged the jury in accordance with this mandatory provision, and appellant did not object. On appeal, he now contends the "charge on good conduct time is an *incorrect* statement of the law for those offenses enumerated in section 508.149 of the Texas Government Code that preclude the accumulation of good conduct time to qualify a convict for early release under mandatory supervision." (Emphasis added.)

Appellant contends, citing *Jimenez I,* that the article 37.07 section 4 instruction, as applied to him, violates the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution [1] and the due course of law provisions of article I, sections 13 and 19, of the Texas Constitution.[2] Recognizing that in *Jimenez I* we utilized the egregious harm standard of *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984), appellant asserts that, because this is an error of constitutional magnitude, the case, pursuant to TEX.R.APP. P. 44.2(a), should be remanded for another punishment hearing.

Because appellant was eligible for probation, but received a sentence of 15 years, he argues there is no way to conclude beyond a reasonable doubt the error was harmless.

In order to fully comprehend appellant's argument, and why we now overrule our previous holdings in *Jimenez I* and *Bradley,* an understanding of the pertinent mandatory supervision and parole statutes is required.

**Mandatory Supervision**

Mandatory supervision means "the release of an *eligible* inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence *not on parole* but under the supervision of the pardons and paroles division." TEX. GOV'T CODE ANN. § 508.001(5) (Vernon Supp.2001) (emphasis added). Section 508.147(a) provides as follows:

*Except as provided by Section 508.149,* a parole panel *shall order* the release of an inmate who is not on parole to *mandatory supervision* when the actual calendar time the inmate has served *plus any accrued good conduct time* equals the term to which the inmate was sentenced.

TEX. GOV'T CODE ANN. § 508.147(a) (Vernon 1998) (emphasis added). Under section 508.149(a), which reads as follows:

[A]n inmate *may not be released to mandatory supervision* if the inmate is serving a sentence for or has been previously convicted of: (1) an offense for which the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, Code of Criminal Procedure; ... [or] (11) a first degree felony under Section 29.03 [aggravated robbery], Penal Code; ....

---

**1.** U.S. CONST. amends. V and XIV.

**2.** TEX. CONST. art. I, §§ 13, 19.

TEX. GOV'T CODE ANN. § 508.149(a) (Vernon Supp.2001) (emphasis added). It must be emphasized that section 508.149 does not preclude appellant or similarly situated defendants from earning good conduct time; it merely denies them eligibility for mandatory supervision.

## Parole

Parole means "the *discretionary* and conditional release of an *eligible* inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division." TEX. GOV'T CODE ANN. § 508.001(6) (Vernon Supp.2001) (emphasis added). A parole panel *"may consider* for release and release on parole an inmate who: (1) has been sentenced to a term of imprisonment in the institutional division; (2) is confined ...; and (3) is *eligible* for release on parole." TEX. GOV'T CODE ANN. § 508.141 (Vernon 1998) (emphasis added).

An inmate serving a sentence for an offense described by Code of Criminal Procedure article 42.12, sections 3g(a)(1)(A), (C), (D), (E), (F) [aggravated robbery], (G), or (H) or an offense with an affirmative finding of a deadly weapon under section 3g(a)(2) "is *not eligible* for release on parole *until* the inmate's actual calendar time served, *without consideration of good conduct time*, equals one-half of the sentence or 30 calendar years, whichever is less...." TEX. GOV'T CODE ANN. § 508.145(d) (Vernon Supp.2001) (emphasis added). Under section 508.145(f), except for certain aggravated offenses, "any other inmate is *eligible* for release on parole when the inmate's actual calendar time served plus good conduct time equals one-fourth of the sentence imposed or 15

years, whichever is less." TEX. GOV'T CODE ANN. § 508.145(f) (Vernon Supp.2001) (emphasis added).

Thus, appellant, convicted of aggravated robbery, and similarly situated defendants are not eligible for early release under mandatory supervision; however, they will become eligible for early release on parole after their actual calendar time served equals one-half of their sentence or 30 calendar years, whichever is less.

The crux of appellant's argument is that, because he is not eligible for mandatory supervision, he simply cannot, as stated in the first sentence of the first paragraph of the charge, "earn time off the period of incarceration imposed through the award of good conduct time." Thus, the mandatory charge erroneously says he *"may* earn time off the period of incarceration imposed through the award of good conduct time." This is essentially the same argument made by the appellants in *Jimenez I* and *Bradley,* and it certainly follows the reasoning of *Jimenez I,* which explicitly followed *Green v. State,* 839 S.W.2d 935, 946 (Tex.App.—Waco 1992, pet. ref'd):

> We believe the Waco Court of Appeals was correct in *assuming* the charge is erroneous when given in a case *where the accumulation of good-conduct time cannot result in early release.*[3]

*Jimenez I,* 992 S.W.2d at 638 (emphasis added). In considering the constitutionality of article 37.07 section 4(a), the panel in *Jimenez I* noted, "the court of criminal appeals has never specifically ruled on the issue of the article 37.07 charge relating to good conduct time *where the defendant is not eligible for good conduct time."* *Jimenez I,* 992 S.W.2d at 637 (emphasis added).

---

**3.** The Waco Court, in *Green,* did not go so far as to hold article 37.07 section 4(a) unconstitutional.

Thus, the panels in *Jimenez I* and *Bradley* held that the article 37.07 section 4(a) reference to good conduct time "violates state due course of law and federal due process when applied to defendants, like appellant, *who are not eligible for it."* *Bradley*, 45 S.W.3d at 224 (emphasis added); *Jimenez I*, 992 S.W.2d at 638.

We note that a number of cases have been decided by other Texas courts of appeals, including the Fourteenth Court of Appeals, reaching the opposite conclusion and further clarifying the issue. *Donoho v. State*, 39 S.W.3d 324, 331–32 (Tex. App.—Fort Worth 2001, pet. filed); *Espinosa v. State*, 29 S.W.3d 257, 261–62 (Tex. App.—Houston [14th Dist.] 2000, pet. filed); *Cagle v. State*, 23 S.W.3d 590, 594 (Tex.App.—Fort Worth 2000, pet. filed); *Edwards v. State*, 10 S.W.3d 699, 705 (Tex. App.—Houston [14th Dist.] 1999, pet. granted); *Luquis v. State*, 997 S.W.2d 442, 443–44 (Tex.App.—Beaumont 1999, pet. granted); *Hyde v. State*, 970 S.W.2d 81, 89–90 (Tex.App.—Austin 1998, pet. ref'd); *Martinez v. State*, 969 S.W.2d 497, 501–02 (Tex.App.—Austin 1998, no pet.).

After carefully deliberating and considering the reasoning and clarification of these cases, the En Banc Court now disavows the reasoning of *Green*, overrules the above holding in *Jimenez I* and *Bradley*, and holds that the article 37.07 section 4(a) reference to good conduct time does not violate state due course of law and federal due process protections when applied to defendants, like appellant, whose actual time in prison is affected by section 508.149(a) of the Texas Government Code.

Our principal reasons for disavowing the analysis in *Green* and overruling *Jimenez I* and *Bradley* are: (1) the charge is not erroneous, and (2) even if it were considered erroneous, the appellant was not denied due process of law and due course of law, because (a) the charge, as a whole,

prevented any possible misunderstanding the jury could have had regarding the effect of good conduct time, and (b) the jury was aware of the effect of its sentence.

**The Charge is not Erroneous**

█ Appellant argues the charge is erroneous because he is not eligible for mandatory supervision. The first sentence of the charge reads:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, *may earn time off the period of incarceration imposed through the award of good conduct time.*

(Emphasis added.)

The confusion arises from the application of the word "imposed." The sentence may be considered erroneous only if read to mean "time off" the period of incarceration will be "imposed" through the award of good conduct time, i.e., if what is "imposed" is "time off." Here, the appellant is not subject to mandatory release when his actual calendar time served plus any accrued good conduct time equals the term of his sentence. Thus, "time off" cannot be "imposed."

However, the sentence is not erroneous when read to mean the period of incarceration "imposed" on appellant may be diminished by the award of good conduct time, i.e., if what is "imposed" is appellant's "period of incarceration." Appellant and similarly situated defendants will become eligible for parole upon serving one-half of their sentence or 30 calendar years, whichever is less. This interpretation, dictated by longstanding principles of logic and grammar, means that the period of incarceration "imposed" on appellant may be diminished by the award of good conduct time.

This second interpretation makes even more sense, and is appropriate, because

the charge does not discuss, and the jury is not made aware of, mandatory supervision. Moreover, section 508.149 of the Government Code does not "preclude the accumulation of good conduct time." Appellant's accumulation of good conduct time may diminish his period of incarceration after he becomes eligible for parole.

Here lies the chief reason we disavow the reasoning of *Green* and overrule the holding of *Jimenez I* and *Bradley*—the charge is not erroneous because the accumulation of good conduct time may in fact result in appellant's early release on parole. *See Espinosa v. State*, 29 S.W.3d 257, 261 (Tex.App.—Houston [14th Dist.] 2000, pet. filed). A parole panel is assisted by guidelines, developed by the parole board, when evaluating whether to release an inmate on parole. *See* Tex. Gov't Code Ann. § 508.144 (Vernon 1998). Those guidelines include "institutional adjustment" and "information in support of parole." 37 Tex. Admin. Code § 145.2 (2001) (Texas Board of Pardons and Paroles, Standard Parole Guidelines). The accrual of good conduct time is "both (1) evidence of an inmate's 'institutional adjustment' and (2) information in support of parole." *Espinosa*, 29 S.W.3d at 261. Also, in the six-month period prior to the date he is reviewed for parole, an inmate "must not have had a major disciplinary misconduct report ... *which has resulted in loss of good conduct time....*" 37 Tex. Admin. Code § 145.3(2)(A) (2001) (Texas Board of Pardons and Paroles, Policy Statements Relating to Parole Release Decisions by the Board of Pardons and Paroles) (emphasis added). As noted by the Fourteenth Court of Appeals:

> Thus, good conduct time is an important aspect of both mandatory supervision and parole. In the context of mandatory supervision, good conduct time is perhaps the more decisive factor because it is part of the equation used in calculating the release date. Parole, on the other hand, is discretionary and is not computed according to formula. *However, the accumulation of good conduct time is nevertheless an important consideration when deciding whether an inmate should be released on parole,* i.e., if an inmate's misconduct has resulted in the loss of good conduct time, he is ineligible for parole for at least six months.

*Espinosa*, 29 S.W.3d at 261 (emphasis added).

Therefore, it is entirely possible that appellant may actually achieve early release on parole, upon becoming eligible for parole, by earning good conduct time. One would think and hope that rehabilitation, as evidenced by earning good conduct time, would be an important factor considered by a parole panel in deciding whether to release an inmate early on parole.

**The Charge Does Not Violate Due Process and Due Course of Law**

■■■■■ We generally presume the jury followed the trial court's instructions as given, and we will not reverse in the absence of evidence that the jury was actually confused by the charge. *Williams v. State*, 937 S.W.2d 479, 490 (Tex.Crim.App. 1996). Even if the first sentence of the charge were considered erroneous, the charge, as a whole, prevented any possible misunderstanding the jury could have had regarding the effect of good conduct time on appellant's incarceration. It is quite clear from the preceding phrase and the very next sentence that appellant "may" earn time off the period of incarceration, not that he "will" earn time off the period of incarceration.

The charge is replete with qualifying "may"s and "might"s. The jury is instructed that prison authorities "may" award good conduct time, and they "may"

take away "all or part of any good conduct time earned." The fourth paragraph clearly warns, "*It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment....*" (Emphasis added.)

Finally, the fifth paragraph completely prevents any possible misunderstanding the jury could have had regarding the effect of good conduct time:

You may consider the existence of the parole law and good conduct time. *However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.* You are *not to consider* the manner in which the parole law may be applied to this particular defendant.

(Emphasis added.) The bottom line is that the jury was instructed it could merely consider the "existence of the parole law and good conduct time." It was admonished, explicitly and unequivocally, that it could not consider the extent to which good conduct time could be awarded to or taken away from appellant. Appellant's argument regarding his ineligibility for mandatory supervision provides a distinction that makes no difference.

Whether or not appellant was ineligible for mandatory supervision was irrelevant and of no consequence to the jury sentencing him. In effect, the jury could only presume his incarceration would not be affected by the award of good conduct time. This alone precludes any possibility that appellant and similarly situated defendants are somehow denied due process and due course of law by the statutorily required charge.

Furthermore, again assuming the first sentence of the charge was erroneous, the appellant was not denied due process and due course of law because the jury was aware of the effect of its sentence. The third paragraph clearly states appellant will not be eligible for parole until his actual time served "equals one-half of the sentence imposed or 30 years, whichever is less," and it actually tracks the language of section 508.145(d). *See* TEX. GOV'T CODE ANN. § 508.145(d) (the statute reads: "without consideration of good conduct time"; the charge read: "without consideration of any good conduct time he may earn").

The simple math is clear: one-half of 15 is seven and one-half. The jury knew with absolute certainty that appellant would serve seven and one-half years in prison before even becoming eligible for early release on parole. Even though appellant will not be eligible for mandatory supervision, he will be eligible for early release on parole after seven and one-half years. While appellant is in prison, he may accumulate good conduct time. Good conduct time will not make him eligible for parole before the expiration of seven and one-half years; however, a parole panel may look at appellant's good conduct time and *consider* it, in its *discretion*, when deciding whether to award parole when appellant becomes eligible in seven and one-half years.

Because a parole board panel may consider good conduct time in awarding early release on parole, the first sentence of the charge in question cannot be so erroneous as to amount to a denial of due process or due course of law.

Nevertheless, it is the fifth paragraph of the charge which is absolutely controlling. Because the fifth paragraph of the charge instructs the jury not to consider the extent to which good conduct time could be awarded to or taken away from appellant, the only thing of which the jury could be certain was that he would not become eligible for parole until he served seven and

one-half years. This also precludes any possibility that appellant, and similarly situated defendants, are denied due process and due course of law by the statutorily required charge.

We overrule appellant's fourth and fifth points of error.

### Conclusion

The En Banc Court considered the reasons for disavowing the analysis in *Green,* and overruling *Jimenez I* and *Bradley,* to be compelling. The parole charge is not erroneous, especially in light of the fact that the jury is not even made aware of mandatory supervision. Even if it could be considered erroneous, appellant was not denied due process and due course of law because the charge, as a whole, prevented any possible misunderstanding the jury could have had regarding the effect of good conduct time, and the jury was aware of the effect of its sentence. The result is not only that appellant and similarly situated defendants are not egregiously harmed and cannot be harmed, they do not suffer a denial of due process and due course of law.

We affirm the judgment of the trial court.

Justice JENNINGS dissented from the panel's decision on original submission.

En banc consideration was requested.

A majority of the Court voted for en banc consideration of the panel's decision.

Justice MIRABAL joins only the portion of the en banc opinion dealing with points of error four and five, overruling the specified holding in *Bradley* and *Jimenez I.*