In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00175-CR
______________________________


LARRY EVERETT WHITE, JR., Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 21,451


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â On June 6, 2003, Larry Everett White, Jr., waived his right to a jury trial and pled guilty with
no plea agreement to five felony charges pending in Hunt County, Texas. This appeal concerns only
White's conviction for retaliation in trial court cause number 21,451.


 The indictment further alleged
White had been previously, finally, and sequentially convicted of two additional felony offenses. 
After the trial court admonished White about the enhanced punishment range applicable in this case
(twenty-five to ninety-nine years, or life), White pled "true" to enhancement allegations. The trial
court ordered a presentence investigation report. On July 24, 2003, the trial court sentenced White
to fifty years' imprisonment. White timely appealed his conviction and sentence to this Court. 
Â Â Â Â Â Â Â Â Â Â Â Â White appealed each of his five convictions separately, but the briefs in four of the cases are
substantively identical: White's counsel has reviewed the record and determined there are no
nonfrivolous issues that may be raised; he asks that we allow him to withdraw as counsel pursuant
to Anders v. California, 386 U.S. 738 (1967).
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Since the briefs and arguments raised therein are identical in each appeal, for the reasons
stated in White v. State, No. 06-03-00173-CR, we likewise affirm the trial court's judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â March 2, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â March 18, 2004

Do Not Publish





r early release. Moreover, Rogers was not eligible for community
supervision, so the jury was required to give him a term of imprisonment.

 Likewise, the omitted language set out in (3) above was unnecessary in this case
and would only have misled the jury, because Rogers could not use good conduct time for
early release and it was impossible for him to receive punishment of less than four years. 
See Tex. Pen. Code Ann. § 12.32 (Vernon 1994).

 If it was error for the trial court to make these changes, and we think it was not, the
error certainly did not harm Rogers. Moreover, Rogers does not complain of these
differences between the required charge and the charge actually given in this case, but
only that the charge given denied him due process.

 Rogers' actual complaint on appeal is that the charge required by Article 37.07,
Â§Â 4(a) denied him due process because he is not eligible for good conduct time. The same
contention has been rejected by numerous courts, including this one. See Luquis v. State,
72 S.W.3d 355, 361 (Tex. Crim. App. 2002); Muhammad v. State, 830 S.W.2d 953, 956
(Tex. Crim. App. 1992); Oakley v. State, 830 S.W.2d 107, 111-12 (Tex. Crim. App. 1992);
Bui v. State, 68 S.W.3d 830, 841 (Tex. App-Houston [1st Dist.] 2002, no pet.); Washington
v. State, 59 S.W.3d 260 (Tex. App.-Texarkana 2001, pet. ref'd); Donoho v. State, 39
S.W.3d 324, 331-32 (Tex. App.-Fort Worth 2001, pet. ref'd); Espinosa v. State, 29 S.W.3d
257, 261-62 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd); Cagle v. State, 23 S.W.3d
590, 594 (Tex. App.-Fort Worth 2000, pet. ref'd); Edwards v. State, 10 S.W.3d 699, 705
(Tex. App.-Houston [14th Dist.] 1999), pet. dism'd, improvidently granted, 67 S.W.3d 228
(Tex. Crim. App. 2002) (per curiam).

 Moreover, even if the jury improperly considered when Rogers would be eligible for
parole in assessing his punishment, Rogers encouraged it to do so in his final argument:

 What kind of sentence? I don't know. The D.A. told you he wants life. 
[Rogers is] forty years old. The jury charge tells you he's going to have to
serve - he's got to serve absolutely half of what he gets. Not that he gets out
then, but he's got to serve half or thirty years at the most before he can even
come up for parole. He's 40. What do you give him? Fifteen, twenty years? 
Twenty years, he'll be fifty before he comes up for parole.

Therefore, even if the jury did consider when Rogers would be eligible for parole in
assessing his punishment, Rogers may not complain of an error he encouraged the jury
to make.


 The judgment is affirmed.


 William J. Cornelius

 Justice*


*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment



CONCURRING OPINION


 I agree the charge the trial court gave the jury did not violate Rogers' right to due
process of law. I cannot agree, however, that it was not error for the trial court to give a
charge that deviated from the statutory charge or that the deviations between the actual
jury charge and the statutory charge are immaterial. Therefore, I concur only in the
judgment of this Court.

 The wisdom of the statutory charge has been questioned in cases, such as this, in
which good conduct time the defendant earns will not accelerate his or her eligibility for
release on parole or affect his or her eligibility for release to mandatory supervision. See,
e.g., Luquis v. State, 72 S.W.3d 355, 362 (Tex. Crim. App. 2002) ("To those who are
familiar with the Texas mandatory supervision law and its potential to lesson [sic] the actual
amount of time an inmate spends in prison, this language is somewhat misleading.");
Gilmore v. State, 68 S.W.3d 741, 743-44 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd)
(Frost, J., concurring); Jimenez v. State, 992 S.W.2d 633, 637 (Tex. App.-Houston [1st
Dist.] 1999), aff'd on other grounds, 32 S.W.3d 233 (Tex. Crim. App. 2000), overruled, Bui
v. State, 68 S.W.3d 830 (Tex. App.-Houston [1st Dist.] 2002, no pet. h.). There can be no
doubt, however, that the Legislature intended the charge be given in such cases. As the
Texas Court of Criminal Appeals commented recently:

 The Texas Legislature enacted legislation that requires the trial judge
to instruct the jury in the precise wording that the statute recites. Article
37.07, section 4(a) sets out, verbatim, the words that the trial judge is to use. 
There are even quotation marks around the wording of the instruction. That
is at least some indication that the Legislature did not want any creative
deviations from its chosen language. The Legislature prefaced its instruction
language with directions that "the court shall charge the jury in writing as
follows: . . ." The use of the word "shall" generally indicates a mandatory
duty. There is no reason to think that the Legislature enacted merely a
suggested parole law jury instruction, one that trial judges should cut and
paste as they see fit.


Luquis, 72 S.W.3d at 363.

 In the first appeal by this same defendant, we reversed the judgment on punishment
because the trial court failed to give the statutory charge and then gave an incomplete
response when the jury asked for additional information. See Rogers v. State, 38 S.W.3d
725, 729-30 (Tex. App.-Texarkana 2001, pet. ref'd). The trial court in the present case
again deviated from the statutory charge. This was error, even though Rogers never
objected to the error at trial. As the Texas Court of Criminal Appeals commented in
Luquis, "Trial judges may occasionally doubt the wisdom of a particular law, but they are
not free to ignore explicit legislative directions unless those directives are clearly
unconstitutional." Luquis, 72 S.W.3d at 363.

 The question then is whether the jury charge is unconstitutional. The majority
correctly notes that the constitutionality of the statutory charge has been upheld by
numerous courts, including most recently the Texas Court of Criminal Appeals. See id. at
361. However, we are not faced in the present case with the charge contained in the
statute; rather, we are faced with the charge as modified by the trial court.

 The majority concludes the differences between the statutory charge and the charge
as given are immaterial and, therefore, the charge as given is not unconstitutional. 
However, the differences between the statutory charge and the charge as given are
significant and potentially misleading.

 In the first paragraph of the charge, the jury is instructed the defendant may earn
time off "the sentence imposed," rather than "the period of incarceration imposed" as
provided in the first paragraph of the statutory charge. See Tex. Code Crim. Proc. Ann.
art. 37.07, Â§ 4(a) (Vernon Supp. 2002). In the third paragraph, the jury is instructed that
Rogers will not become eligible for parole until the actual time served equals one half of
"the sentence imposed" or thirty years, whichever is less. However, the third paragraph
omits the portion of the statutory charge informing the jury that Rogers will serve this time
regardless of any good conduct time he might earn. See Tex. Code Crim. Proc. Ann. art.
37.07, Â§ 4(a).

 The instruction in the first paragraph tells the jury Rogers may earn time off "the
sentence imposed." The instruction in the third paragraph tells the jury Rogers will not
become eligible for parole until the actual time he serves equals the lesser of one half "the
sentence imposed" or thirty years. Reading these paragraphs in conjunction, the jury could
be misled into believing any good conduct time Rogers earns will reduce "the sentence
imposed," making him eligible for parole sooner. By omitting the instruction in paragraph
three that good conduct time will not operate to accelerate Rogers' eligibility for parole, the
trial court failed to provide the instruction that could have corrected any misunderstanding
caused by its previous instructions.

 The majority dismisses the differences between the phrases "sentence imposed"
and "period of incarceration imposed," concluding they are substantially the same and in
no way related to the actual time served. It is not the differences between these phrases
that is significant; rather, it is the fact the jury is told the "sentence imposed" may be
reduced by the amount of good conduct time earned, but is not told Rogers must first serve
one half his sentence or thirty years before good conduct time will affect his eligibility for
parole. The fact that the trial court changed the phrase "period of incarceration imposed"
to "sentence imposed" in the first paragraph, making it consistent with the phrase in the
third paragraph, heightens the problem.

 A reasonable jury could read this charge and conclude Rogers may become eligible
for parole when he has served one half of the sentence the jury imposed less any good
conduct time Rogers earned. This is not an accurate statement of the law governing
Rogers' eligibility for parole. Therefore, the charge is potentially misleading.

 I do not believe, however, that the charge, when read as a whole, violated Rogers'
right to due process of law. In addressing a similar challenge to the charge contained in
Article 37.07, Â§ 4(a), the Texas Court of Criminal Appeals held the appellant had the
burden of showing a reasonable likelihood that the jury was misled by the charge or that
it assessed a higher sentence based on any misconstruction of the charge. Luquis, 72
S.W.3d at 367-68. This Rogers cannot do.

 In Luquis, the court noted there was "no evidence or even a plausible argument that
this jury connected 'good conduct time' with release on mandatory supervision, a legal
concept about which the jury was told nothing." Id. at 362-63. Despite the differences
between the charge given in the present case and the statutory charge given in Luquis, the
same conclusion applies in the present case because here, as in Luquis, the jury was not
informed about the existence of mandatory supervision.

 As mentioned previously, the charge as given is misleading with respect to the
possible impact of good conduct time on Rogers' eligibility for parole. Still, the jury was
informed that Rogers "may" earn time off "the sentence imposed" through good conduct
time, not that he necessarily would earn such time off. In addition, the jury was instructed
not to consider the extent to which good conduct time may be awarded to or forfeited by
Rogers and not to consider the manner in which the parole law might be applied to Rogers. 
Assuming the jury followed the instruction as a whole, it would not have based the
punishment it assessed on the possibility that good conduct time might make Rogers
eligible for parole sooner, as the language of the charge would mislead it to believe.

 Rogers contends his sixty-year sentence is indicative of the jury's intent to make him
eligible for parole as late as possible in an effort to mitigate the impact good conduct time
would have on the length of his incarceration. However, there is no indication the sentence
reflects a misunderstanding of the impact good conduct time will have on his sentence. 
In fact, Rogers' sentence arguably reflects the contrary proposition.

 The jury was told Rogers would serve the lesser of one half of "the sentence
imposed" or thirty years before he would be eligible for parole. One half of a sixty-year
sentence is thirty years, meaning that, under the instruction the jury was given, if Rogers
earned any good conduct time, he would be eligible for parole before he served thirty
years. If the jury were concerned that good conduct time would make Rogers eligible for
parole earlier than thirty years, then it would have assessed a punishment that, even if it
were reduced by good conduct time, would not have made Rogers eligible for parole
before thirty years. For example, if the jury assessed a ninety-nine-year sentence, then
Rogers would have to earn over thirty-nine years of good conduct time to have reduced
"the sentence imposed" to a level half of which would be less than thirty years.

 Arguably, the sentence reflects that the jury assessed a punishment calculated to
make Rogers eligible for parole on the latest date possible without consideration of the
amount of good conduct time he could earn. If that is the case, then the sentence would
be improper insofar as it was based, not on the punishment Rogers deserved for his crime,
but on the jury's desire to influence when Rogers would be eligible for parole.

 For example, if the jury believed Rogers deserved a thirty-year sentence, but
assessed a sixty-year sentence to ensure he served thirty years, then the sentence would
be improper because Rogers could end up serving more time in jail than he deserved for
his crime. In short, the sentence would reflect the jury's assumption that Rogers would
receive parole once he was eligible, a consideration that, under either Article 37.07, Â§ 4(a)
or the instruction it was given, the jury was not entitled to make.

 Rogers never makes this contention on appeal. Further, there is no indication in the
record the jury considered anything other than the sentence Rogers deserved for his crime. 
To conclude otherwise would be to say the jury could not assess a punishment that would
also make a defendant eligible for parole on the latest date possible under the law. I also
agree with the majority that, if the jury did improperly consider when Rogers would be
eligible for parole, Rogers encouraged the jury to make this error in his closing argument
and should not be heard to complain on appeal.

 For these reasons, I concur in the judgment of this Court.


 Donald R. Ross

 Justice


DISSENTING OPINION



 Years ago there was a hue and cry over the courts' failure to inform jurors about
good conduct time and eligibility for parole. This absence of instruction created the danger
of jurors speculating about these matters and possibly basing their verdicts on myths,
rumors, and uninformed views. Thus, it was a proper endeavor for the Legislature to seek
to require that the jurors be informed of the laws pertaining to good conduct and parole. 
 The instruction the Legislature produced to inform the jurors regarding cases such
as this, Tex. Code Crim. Proc. Ann. art. 37.07, Â§ 4(a) (Vernon Supp. 2002), as it is written
now, can only function to deceive, confuse, and invite erroneous conclusions. Although
the defendant's conduct will be evaluated when the defendant becomes eligible for parole,
the defendant is not entitled to good conduct time.

 Although the instruction does not label the method of reduction involving good
conduct time or "mandatory supervision," it implies a method distinct from parole, which
is sufficient to make the instruction regarding such defendants substantively incorrect and
misleading, regardless of how much the jurors know about the justice system. It is a
disservice both to the defendant and the jurors involved to provide them with misleading
information. This instruction is fundamentally unfair, denying the defendant due course of
law in violation of Article I, Â§ 19 of the Texas Constitution. The burden should not be on
each defendant to meet the near-impossible task of proving that the jury was in fact misled
by the instruction and that the defendant was actually harmed. The Legislature should
amend the instruction to cure this defect.

 The instruction actually given in this case is even less accurate than the statutory
instruction in that it not only indicates a separate and distinct way good conduct time may
decrease a defendant's period of incarceration, and it specifically states the defendant
"may earn time off the sentence imposed through the award of good conduct time."

 I disagree that statements made by Rogers's counsel in the closing arguments
waives Rogers's complaint. A jury is more likely to, and should, be guided by the court's
charge, not what a lawyer says in arguing his or her side of the case. 

 Because the charge and the statute are fundamentally unfair as applied to this type
of case, I believe it violates the defendant's rights of constitutional due process. The
Legislature should consider revising the instruction under Article 37.07, Â§ 4(a) to eliminate
or clarify in what way good conduct time may affect defendants who are not subject to the
instruction now contained in the statute.

 I would reverse the punishment portion of the case because the charge inaccurately
tells the jury that the defendant in this case can earn earn time off the sentence imposed
and thus violates the defendant's right of constitutional due process.


 Ben Z. Grant

 Justice


Date Submitted: May 6, 2002

Date Decided: October 8, 2002


Publish